# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Mary P., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 17-CV-06545 <br><br> Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mary P.[1] seeks reversal or remand of the final decision of the Acting Commissioner of Social Security denying her claim for Supplemental Security Income. Doc. [16]. The Commissioner filed a response asking the Court to affirm its decision, Doc. [26, 27], and Plaintiff filed a reply. Doc. [31]. For the reasons set forth below, this Court cannot hold that the Commissioner's decision denying SSI to Plaintiff was based on substantial evidence in the record due to certain prejudicial errors in the administrative decision that, if corrected, might lead to a different result. Accordingly, the decision is reversed and this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

## Background

This case's procedural posture is lengthy. Plaintiff filed an application for Supplemental Security Income ("SSI") on December 17, 2009, alleging a disability onset date of December 1, 2007. R. 169. She later amended her onset date to December 17, 2009, the date she filed her application. R. 1173. Plaintiff's application for benefits was denied initially, upon

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by her first name and the first initial of his last name or alternatively, by first name.

reconsideration, and in a decision dated August 23, 2011 following a hearing by an Administrative Law Judge ("ALJ"). R. 22. On September 27, 2012, Plaintiff's request for review by the Appeals Council was denied. R. 1. Then, Plaintiff appealed the administrative decision and a district court reversed and remanded the ALJ's decision in an April 16, 2014 opinion. R. 822-46; *Mary P. v. Colvin*, No. 12 C 8983, 2014 WL 1612857 (N.D. Ill. 2014). Following that ruling, the Appeals Council remanded the matter to the ALJ. R. 850. On remand, the ALJ again denied Plaintiff's application in a February 27, 2015 decision. R. 677-87. Then, Plaintiff again appealed the ALJ's decision to the district court. R. 1153-54. The district court then granted the defendant's proposed agreed order to reverse with remand for further administrative proceedings. R. 1155. Following the second judicial remand, on April 26, 2016, the Appeals Council administratively remanded the matter for further proceedings before a new ALJ. R. 1164-66. The new ALJ conducted a new hearing, R. 1087-1132, and then issued a decision denying Plaintiff's application on October 12, 2016. R. 1056-70. Plaintiff requested review by the Appeals Council but was denied, R. 1047-52, leaving the ALJ's decision as the final decision of the SSA, reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

Plaintiff alleges that she is disabled because of morbid obesity, asthma, hypertension, degenerative joint disease of the left knee and the lumbar spine, and other impairments including a thyroid goiter, gout, chest pain, and depression. Plaintiff's past work experience includes childcare and babysitting. R. 1094-96. Plaintiff testified that she stopped babysitting in 2009 because of her back, knees, and immobility. R. 1096.

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," that is, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Although generous, this standard "is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See 20* C.F.R. § 416.920(a)(4). Under the regulations, the Commissioner must consider: (i) whether the claimant has performed any substantial gainful activity during the period for which she claims disability; (ii) if not, whether the claimant has a severe impairment or combination of impairments; (iii) if so, whether the claimant's impairment meets or equals any listed impairment; (iv) if not, whether the claimant retains the residual functional capacity ("RFC") to perform his past relevant work; and (v) if not, whether she is unable to perform any other work existing in significant numbers in the national economy. *See id.*; *see also Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and if that burden is met, the burden shifts at step five to the Commissioner to provide evidence that the claimant can perform work existing in significant numbers in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(v).

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 17, 2009, the application date as amended. R. 1059. At step two, the ALJ found that Plaintiff has the following *severe* impairments: morbid obesity, asthma, hypertension, mild degenerative joint disease of the left knee, mild degenerative disc disease of the lumbar spine. R. 1059. The ALJ noted several non-severe impairments that included a thyroid goiter, food allergies, left foot calcaneal spurs, left toe gout versus cellulitis, and depression. *Id.* The ALJ also noted a non-medically determinable impairment of chest pain. *Id.* At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. R. 1062. At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR § 416.967(a) with certain limitations:

> no more than occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; never climbing of ladders, ropes and scaffolds; should never work around extraordinary hazards such as unprotected heights and dangerous unguarded moving mechanical parts; should never work in environments with exposure to concentrated pulmonary irritants such as dust, fumes, odors, and gases.

R. 1063. At step five, the ALJ determined that Plaintiff "has no past relevant work" and that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." R. 1069. The ALJ found that Plaintiff could perform occupations such as assemblers (over 21,000 jobs), sorters (over 20,000 jobs), and visual inspectors (over 40,000 jobs). R. 1069-79. Accordingly, the ALJ concluded that Plaintiff is not disabled under the Social Security Act. R. 1070.

### A. ALJ's Weighing of Medical Opinion Evidence

In support of reversal and remand, Plaintiff argues that the ALJ erred in weighing medical opinion evidence. Specifically, Plaintiff argues that the ALJ erred in weighing treating physicians Dr. Chukwudozie Ezeokoli's and Dr. Bonnie Thomas' medical opinion evidence.

An ALJ must give a treating physician's opinion controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 416.927(c)(2); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). "An ALJ is required to weigh all medical opinion evidence pursuant to the 'checklist of factors'" enumerated in section 416.927(c). *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). The checklist instructs an ALJ "to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss*, 555 F.3d at 561 (7th Cir. 2009). An ALJ's failure to explain how she weighed medical opinion evidence by employing the factors mandates remand. *See Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018). "[R]ejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled, as happened here, can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). The Court addresses the ALJ's analysis into the weight of Dr. Ezeokoli's and Dr. Thomas' medical opinions in turn.

### 1. Treating Physician Dr. Chukwudozie Ezeokoli

Plaintiff first contends that the ALJ wrongly discounted the opinion of her treating physician, Dr. Ezeokoli. The ALJ's decision assigned little weight to Dr. Ezeokoli's medical opinion. R. 1067. Dr. Ezeokoli treated Plaintiff and submitted an assessment of her physical residual functional capacity. *See, e.g.*, R. 541-45. Dr. Ezeokoli's medical opinion stated that he treated Plaintiff every two months over the course of six months for a total of two visits. R. 541; *see also* Doc. [16] at 15*;* Doc. [31] at 7. Dr. Ezeokoli diagnosed Plaintiff with asthma, obesity, osteoarthritis of both knees, and high blood pressure as chronic conditions. R. 541. Dr. Ezeokoli's clinical findings and objective signs that yielded his diagnosis include shortness of breath, bilateral knee swelling and tenderness, and wheezing. R. 541. He noted that Plaintiff could walk only 1-2 city blocks without rest or severe pain, sit for only 45 minutes at a time, stand for 20 minutes at a time, stand/walk for less than 2 hours in an 8-hour working day, and sit for 2 hours in an 8-hour working day. R. 542-43. Dr. Ezeokoli opined that Plaintiff will be required to take unscheduled breaks of 15-30 minutes every 30-45 minutes and miss about four days of work per month. R. 543- 44. Dr. Ezeokoli added that Plaintiff's experience of pain or other symptoms was constant and severe enough to interfere with attention and concentration needed to perform simple work tasks. R. 542. Dr. Ezeokoli assessed that Plaintiff was incapable of even low stress jobs. R. 542.

The ALJ reasoned that Dr. Ezeokoli's opinion deserved only little weight because it was "without basis in objective findings," that his "conclusions are inconsistent with the findings set forth by other treating and examining providers during the relevant time period, which largely reflect intact strength and normal range of motion[,]" and that he had only seen Plaintiff twice at the time he completed his RFC assessment. R. 1067.

The ALJ's predominant rationale in support of finding Dr. Ezeokoli's medical opinion inconsistent with the record is that "the findings set forth by other treating and examining providers during the relevant time period, [ ] largely reflect intact strength and normal range of motion, normal gait as discussed in detail above." R. 1067. This conclusory statement does not point to which treating and examining providers the ALJ is referring. And the Court is unable to identify these "other treating and examining providers" who supposedly gave inconsistent opinions because it is not clear that other physicians provided inconsistent medical opinions. Rather, other providers provided *consistent* reports of Plaintiff's health. For example, the ALJ does not explain how Dr. Ezeokoli's medical opinion is inconsistent with Dr. De Biase's[2] finding that Plaintiff had physical restrictions in walking. R. 492-95. Dr. De Biase observed that Plaintiff had a wobble with ambulation, an abnormal gait, difficulty getting on and off the exam table, and a limited range of motion accompanied by pain in her lumbosacral spine, both hips, and both knees. R. 492-95; R. 1065. Nor does the ALJ explain how Dr. Ezeokoli's medical opinion differs from Dr. John Groch's[3] consultative evaluation that identified small degenerative osteophytes, mild facet hypertrophy along the lower lumber spine, disc space narrowing along the lower lumber spine, and evidence for a transitional vertebra. R. 489. Dr. Groch's impression was that Plaintiff had mild degenerative arthritic change in the lumbar spine and bony hypertrophy along the iliac crests. R. 489. Further, the ALJ's decision does not explain how Dr. Ezeokoli's medial opinion was inconsistent with emergency department physician Dr. Wakas Ahmad's diagnosis that Plaintiff suffered from degenerative joint disease and arthritis, R. 635-37, or emergency department

---

[2] Dr. De Biase provided an impartial consultative examination at the request of the state agency physicians in April 2010.

[3] Dr. Groch provided an impartial consultative examination at the request of the state agency physicians in April 2010.

physician Dr. Calvin Javier's impression that Plaintiff had joint space narrowing of the left knee. R. 645. As a result, the ALJ failed to build a logical bridge to support the ALJ's finding that Dr. Ezeokoli's medical opinion was inconsistent with other medical opinions in the record as a ground for discounting his medical opinion. *See Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014) ("the ALJ must explain her decision in such a way that allows us to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record.") (internal quotations and citation omitted).

The ALJ also discounted Dr. Ezeokoli's medical opinion because he noted that "they are without basis in objective findings" because "he noted unremarkable objective findings including normal musculoskeletal exam." R. 1067. But Dr. Ezeokoli's ultimate medical opinion could have relied on other conditions that he noted such as osteoarthritis in her knees, asthma, hypertension, obesity, and an exercise tolerance of only a couple blocks. R. 547-48. The ALJ did not attempt to explain why Dr. Ezeokoli's medical opinions that Plaintiff suffered from osteoarthritis in her knees, asthma, hypertension, and obesity among other physical conditions were without basis. As a result, the ALJ failed to build a logical bridge in support of the "without basis in objective finding" ground for discounting his medical opinion. *See Murphy*, 759 F.3d at 815 (7th Cir. 2014).

The ALJ also discounted Dr. Ezeokoli's medical opinion due to his limited treatment history with Plaintiff. Greater weight is generally accorded to an examining physician's medical opinion than to a non-examining physician's medical opinion. 20 CFR § 416.927(c)(1). An ALJ may consider an acceptable medical source who has treated or evaluated the claimant only a few times or only after long intervals (e.g., twice a year) to be a treating source if the nature and frequency of the treatment or evaluation is typical for the condition. 20 CFR § 416.927(a)(2). In this regard, the ALJ noted that Dr. Ezeokoli's medical opinion was based on two treatment

8

interactions. But the ALJ gave considerable weight to state agency medical consultants who had fewer interactions with Plaintiff than Dr. Ezeokoli. R. 1066; *see Murphy*, 759 F.3d at 815. Nor did the ALJ address whether the nature and frequency of Plaintiff's visits with Dr. Ezeokoli were typical for Plaintiff's condition. 20 CFR 416.927(a)(2). These logical disparities in addressing Dr. Ezeokoli's treatment history of Plaintiff, left unexplained by the ALJ, leave analytical gaps in the ALJ's analysis.

Additionally, the ALJ erred to the extent that he discounted Dr. Ezeokoli's medical opinion due to Plaintiff s failure to follow his prescribed treatment for physical therapy and pain clinic attendance to treat her knees without exploring why she had not followed through. R. 1067. It is true that "infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure or infrequency of treatment." *Beardsley*, 758 F.3d at 840 (quoting *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008)). But the ALJ may not draw any inferences "about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care." *Id.* On this point, the Social Security Administration has instructed ALJs to "not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p. The Seventh Circuit has reversed and remanded ALJs' decisions for failing to explore the reason(s) for a claimant's failure to follow prescribed treatment. *See Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (holding that the ALJ erred by drawing negative inference from SSI claimant's decision not to undergo surgery without inquiring for a valid reason, such as the need to tend to her children); *see also Beardsley*, 758 F.3d at 840 (holding similarly and emphasizing the ALJ's failure to address factors

9

such as ability to pay). SSR 16-3p suggests reasons to explain why a claimant may not comply with prescribed treatments, including but not limited to an individual's ability to afford the treatment and an individual's ability to understand the prescribed appropriate treatment. SSR 16-3p. But here, the ALJ made no attempt to determine why Plaintiff elected not to engage physical therapy or a pain clinic for her knees. The failure to explore potential reasons to explain why Plaintiff did not follow Dr. Ezeokoli's recommendation for physical therapy or to attend a pain clinic is a legal error. So, the fact that Plaintiff did not follow through with such treatment was not a sufficient basis to discount Dr. Ezeokoli's opinion.

Both an ALJ's failure to explain how she weighed Dr. Ezeokoli's medical opinion evidence and failure to explore reasons for Plaintiff's noncompliance with his prescribed treatment before discounting Dr. Ezeokoli's medical opinion mandate reversal and remand. *See Gerstner*, 879 F.3d at 263; *see also Beardsley*, 758 F.3d at 840. These are important errors because they led to discounting treating physician Dr. Ezeokoli's medical opinion down to little weight. These are not harmless errors because Plaintiff may have been determined to be disabled had the ALJ afforded greater weight to Dr. Ezeokoli's medical opinions.

### 2. Treating Physician Dr. Bonnie Thomas

Next, Plaintiff contends that the ALJ wrongly discounted the opinion of another treating physician, Dr. Thomas. The ALJ's decision assigned little weight to Dr. Thomas' medical opinion. R. 1068. Dr. Thomas treated Plaintiff and submitted an assessment of her physical residual functional capacity. R. 1394-97. Dr. Thomas confirmed Plaintiff's osteoarthritis of the knee, obesity, thyroid nodule, asthma, goiter, hypertension, gout, and hidradenitis axilaris. R. 1631-32; R. 1637. She also observed knee tenderness. R. 1633. Dr. Thomas' medical evaluation noted that she examined Plaintiff every 3 months between February 2014 and December 2015. R. 1394. The

physician's report noted that Plaintiff had "More Than 50% Reduced Capacity" in turning and climbing; "20 to 50% Reduced Capacity" in walking, bending, standing, stooping, sitting, pushing, pulling, traveling, and in performing activities of daily living; and "Up to 20% Reduced Capacity" in fine manipulation, gross manipulation, and finger dexterity in both the right and left hand. R. 1397. Dr. Thomas also opined that Plaintiff could not lift more than 10 pounds at a time. R. 1397.

The ALJ discounted Dr. Thomas' medical opinion to little weight, explaining that her medical opinion was "not substantiated by objective findings of record . . . which establish normal range of motion and strength throughout the extremities. In fact, there is no objective basis in the file for these limitations at all, as the claimant has no documented upper extremity issues nor speaking difficulties indicated in the medical file, yet these are indicated as reduced capacity in the report." R. 1068. But the ALJ's decision lacks explanation as to how she reached her decision to discount Dr. Thomas' medical opinion in a rational manner based logically on specific findings and evidence in the record. *See Murphy*, 759 F.3d at 815. Indeed, the ALJ's explanation mischaracterizes the record. For one, there is other evidence in the record to support Dr. Thomas' observation that Plaintiff had less than normal range of motion and strength throughout her extremities. One example is consultative examiner Dr. De Biase, who observed that Plaintiff had a wobble with ambulation, an abnormal gait, difficulty getting on and off the exam table, and a limited range of motion accompanied by pain in her lumbosacral spine, both hips, and both knees. R. 492-95. Second, the ALJ's statement that there is "no documented upper extremity issues" misses medical notes indicating "left anterior shoulder diffuse mild tenderness to palpation . . . ." R. 1468. Third, the ALJ's basis for discounting Dr. Thomas' medical opinion for a lack of an objective basis for purportedly opining that Plaintiff has a speaking impairment is a misreading of

Dr. Thomas' medical notes. R. 1068. Rather, Dr. Thomas' medical evaluation clearly marked an 'A' – meaning "Full Capacity" – next to the fillable blank for the assessment of Plaintiff's speaking ability, not a 'D' meaning "More Than 50% Reduced Capacity." R. 1397. To the extent that Dr. Thomas' 'As' look like 'Ds,' Dr. Thomas' 'A' in "N/A" looks very similar to the letter she handwrote in the fillable blank next to "Speaking." R. 1397. A visual follows:



R. 1397. Accordingly, in the Court's opinion, the ALJ's reason for discounting Dr. Thomas' medical opinion is based in part on the ALJ's erroneous misreading of Dr. Thomas' handwriting.

Because mischaracterizations of the record served as grounds to discount Dr. Thomas' medical opinion, R. 1068, this Court holds that the ALJ improperly weighed treating physician Dr. Thomas' medical opinion and that the ALJ's decision is not based on substantial evidence in the record.

Next, Plaintiff contends that the ALJ's decision warrants reversal because the ALJ discounted Dr. Thomas' medical opinion without applying the mandatory factors prescribed in 20 CFR § 416.927. *See Bauer*, 532 F.3d at 608 ("An ALJ is required to weigh all medical opinion

evidence pursuant to the 'checklist of factors'"). Under Section 416.927(c)(2), if the ALJ does "not give the treating source's medical opinion controlling weight," the ALJ must "apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion." 20 CFR § 416.927(c)(2). These factors include (i) length of the treatment relationship and the frequency of examination, (ii) nature and extent of the treatment relationship, and (iii) supportability. 20 CFR § 416.927(c)(2); *see also Moss*, 555 F.3d at 561 (holding that the checklist instructs an ALJ "to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion."). The ALJ did not address these factors. First, the ALJ's decision did not address the length or frequency of Plaintiff's treatment relationship with Dr. Thomas. 20 CFR § 416.927(c)(2)(i). The ALJ should have noted that Dr. Thomas examined Plaintiff on at least four occasions. R. 993-96 (July 2014); R. 1383-86 (December 2015); R. 1630-36 (February 2015); R. 1636-43 (June 2015). Second, the ALJ neither addressed the nature nor the extent of the treatment relationship with Dr. Thomas. 20 CFR § 416.927(c)(2)(ii). Indeed, the ALJ's decision did not even cite Dr. Thomas by name, let alone her medical specialty or the tests she performed on Plaintiff. R. 1068; 20 CFR § 416.927(c)(2)(ii)(5); *see Moss*, 555 F.3d at 561 (noting that an ALJ should "consider the . . . the physician's specialty [and] the types of tests performed"). Accordingly, the ALJ erred by assigning Dr. Thomas' medical opinion little weight without fully considering relevant regulatory factors. This was not a harmless error because a proper weighing of Dr. Thomas' medical opinion may have afforded more weight, possibly affecting the ALJ's conclusion as to disability. Because of this error, this Court holds that the

ALJ's decision was not based on substantial evidence in the record. *See Gerstner*, 879 F.3d at 263. The case must be reversed and remanded for reconsideration of Dr. Thomas' opinion. *See id.*

B.  **Outdated Non-Examining Physician Assessments**

Plaintiff argues that the ALJ erred in relying on two state agency medical consultants' opinions that were rendered in August 2010 as they did not account for about 6 years' worth of other medical opinions and evidence. For the reasons that follow, the Court agrees with Plaintiff.

An ALJ should not rely on a state agency medical consultant's medical opinion as evidence where that medical consultant has not reviewed all the pertinent evidence. *See Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) ("the ALJ erred by continuing to rely on an outdated assessment by a non-examining physician and by evaluating himself the significance of [the treating physician's] report."); *see also Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding where ALJ uncritically accepted non-examining physicians' report because those physicians had not been shown the report of an MRI, explaining that the ALJ "failed to submit that MRI to medical scrutiny, as she should have done since it was new and potentially decisive medical evidence.").

In *Stage*, the Seventh Circuit held that a treating physician's "report, which diagnosed significant hip deformity, a restricted range of motion, and the need for a total left hip replacement, changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment by a non-examining physician and by evaluating himself the significance of [the treating physician's] report." *Stage*, 812 F.3d at 1125. *Stage*'s reasoned that the treating physician's "evaluation contained significant, new, and potentially decisive findings" that "could reasonably change the reviewing physician's opinion." *Id.* The Seventh Circuit explained that "*[i]nstead of consulting a physician*, though, the ALJ evaluated the [newly obtained] MRIs and

14

recommendation himself" and "decided that they were 'similar' to existing evidence" that was already assessed by the non-examining physician. *Id.* (emphasis added). The Seventh Circuit reversed the ALJ for deciding that this newly-found evidence contained within the treating physician's report was "'similar' to existing evidence" and thus deciding, without the benefit of any supportive evidence, that "Stage's need for a hip replacement would not have affected her supposed ability to stand and walk for six hours a day, upon which the ALJ's denial of benefits depended." *Id.*

In *Goins*, the Seventh Circuit reversed the ALJ's decision for having "failed to submit that MRI to medical scrutiny, as she should have done since it was new and potentially decisive medical evidence." *Goins*, 764 F.3d at 680 (collecting cases). The Seventh Circuit explained that the ALJ's failure to submit newly obtained MRI results to non-examining consulting physicians combined with the ALJ's reliance on those physicians' conclusions led the ALJ to "play[ ] doctor (a clear no-no, as we've noted on numerous occasions) . . .[and to] summarize[ ] the results of the 2010 MRI in barely intelligible medical mumbo jumbo . . . ." *Id.* (internal citations omitted).

An ALJ does not commit reversable error just because he or she relied on non-examining consultative opinions that did not scrutinize certain medical evidence in the record. *See Keys v. Berryhill*, 679 F. App'x 477, 480-81 (7th Cir. 2017). In *Keys*, the Seventh Circuit held that the ALJ did not err in relying on the opinions of non-examining agency physicians who did not review two spinal MRIs showing mild and minimal narrowing or a report from the claimant's back surgery. *Id.* at 481. The Seventh Circuit reasoned that "[i]f an ALJ were required to update the record any time a claimant continued to receive treatment, a case might never end," and that "Keys has not provided any evidence that the reports would have changed the doctors' opinions." *Id.* (internal citation omitted).

The instant case is more like *Stage* and *Goins* than *Keys* because Plaintiff has shown that the evidence that became part of the record in the years following the state agency non-examining medical consultants' assessments could have changed the state agency doctors' medical opinions. *See Stage*, 812 F.3d at 1125; *see also Goins*, 764 F.3d at 680; *Keys*, 679 F. App'x at 480-81; R. 515-22; (Non-examining medical consultant Dr. James Madison); R. 530-40 (Non-examining medical consultant Dr. Marion Panepinto). For example, the state agency consultants did not review medical evidence submitted by Plaintiff's treating physicians. R. 521, 536, 541-45, R. 1394. Neither did the state agency physicians review an x-ray of Plaintiff's left knee reflecting medial joint space narrowing, R. 644-45, nor medical notes indicating that Plaintiff's pain warranted a "Joint Aspiration/Injection Procedure" in both knees for symptomatic relief, R. 931, nor an x-ray showing anterior inferior osteophytes of C4 and C5 vertebral body, R. 941, nor an x-ray revealing soft tissue swelling and superior calcaneal spurring in the left-toe related to Plaintiff's gout, R. 1003, nor medical notes indicating "left anterior shoulder diffuse mild tenderness to palpation . . . ." R. 1468. This medical evidence could have affected the state agency consultative physicians' opinions especially because disability findings concerning obesity should consider obesity's combined effects with other impairments, and that the combine effects can be greater than the effects of each of the impairments considered separately. *See* SSR 19-2p. Therefore, the ALJ erred by relying on the state agency physicians' consultative opinions because evidence that became part of the record over the six years following those assessments could have changed the state agency doctors' medical opinions. It follows that this was not a harmless error.

Additionally, the ALJ should not have played doctor to speculate on whether years of medical opinion evidence would have altered the state agency medical consultants' opinions. *See Goins*, 764 F.3d at 680. This determination should have been made by a medical professional and

16

not by the ALJ, who neither possessed the education or training necessary to interpret objective medical data. *See Stage*, 812 F.3d at 1125 ("The ALJ here was not qualified or authorized to determine that Stage's need for a hip replacement would not have affected her supposed ability to stand and walk for six hours a day"); *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) ("ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves."). Therefore, the ALJ's decision was not based on substantial evidence in the record. On remand, the ALJ should submit all the medical evidence to the state agency physicians for further review and scrutiny before making a determination that relies on their opinions.[4]

## Conclusion

For the foregoing reasons, the Commissioner's request to affirm its decision, Doc. [26] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

**SO ORDERED.**

Dated: June 14, 2019

Sunil R. Harjani
United States Magistrate Judge

---

[4] The Court need not address the other arguments advanced by Plaintiff because reversal and remand are appropriate on the grounds discussed herein.